IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIA B.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:23-cv-01705-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

Plaintiff Maria B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 20. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in December 1966, plaintiff alleges disability beginning April 17, 2005. Tr. 53. Plaintiff alleged disability due to a combination of physical medical conditions including low vision, lupus, fibromyalgia, supra vestibular tachycardia, osteoarthritis, high blood pressure, lower back problems, neck problems, migraines, and daily nausea. Tr. 190. Her application was denied initially and upon reconsideration. Tr. 85-89, 91-92. On July 21, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Mark Triplett. Tr. 22-52. On September 28, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 8-21. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since April 17, 2005, the alleged onset date. Tr. 14. At step two, the ALJ determined plaintiff suffered from the following severe, medically determinable impairments: "Degenerative Disc Disease, Lupus, Carpal Tunnel Syndrome, and Obesity." Tr. 14. At step three, the ALJ found plaintiff's impairment, did not meet or equal the requirements of a listed impairment. Tr. 14.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work, except:

> [She] can stand and walk 4 hours in an 8-hour day, and sit for 6 or more hours in an 8-hour day. The claimant can occasionally climb ramps and stairs, but never

>climb ladders, ropes, or scaffolds. The claimant can frequently, but not constantly, reach with the light, dominant upper extremity. The claimant can frequently, but not constantly, handle, finger, and feel bilaterally. The claimant can tolerate occasional exposure to ultraviolet light.

Tr. 15-16.

At step four, the ALJ found plaintiff capable of performing past relevant work as a receptionist. Tr. 19. Alternatively, at step five, the ALJ determined that plaintiff was capable of performing jobs existing in significant numbers in the national economy such as parking lot attendant and toll bridge attendant. Tr. 19-20. The ALJ therefore found plaintiff not disabled. Tr. 20.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors in his written opinion. She contends the ALJ erred by (1) improperly rejecting her symptom testimony, and (2) improperly evaluating Dr. Derek Leinenbach's medical opinion. For the reasons that follow, the Court finds the ALJ erred, reverses, and remands for further proceedings.

**I.    Symptom Testimony**

Plaintiff first contends the ALJ erred by discrediting her subjective symptom testimony without clear and convincing reasons for doing so. Pl.'s Br., ECF No. 11 at 8-11. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The

reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that lupus causes heat sensitivity in addition to sensitivity to sunlight and fluorescent light. Tr. 30. She cannot sit in front of a computer monitor or be outside for any length of time. *Id.* Fibromyalgia limits her ability to sit, stand, and kneel and results in inadequate sleep and leaves her extremely fatigued. *Id.* Her neck injuries mean that she cannot turn her head, cannot hold her arms up over her head, and her arms go to sleep which impacts her ability to drive. *Id.* Her lupus causes brittle bones and resulted in her breaking her leg, which means she cannot kneel, crawl, squat, or stand for more than ten minutes. *Id.* She has constant nausea due to inflammation, and stress raises her blood pressure. Tr. 31. Tachycardia causes her heart to race dangerously. *Id.* She relies on her husband for help with personal care, meal preparation, and household chores. *Id.* She is unable to hold a brush to brush her hair. *Id.*

Her joints swell and her pupils swell. *Id.* Her hands go to sleep constantly. Tr. 35. At her last job, she missed a considerable amount of work, and they eliminated her position. Tr. 38.

In written testimony, plaintiff reported that she is allergic to the sun and fluorescent lights. Tr. 202. She wrote that she is unable to sit, stand, or walk for any length of time. *Id.* She is unable to focus and she is in constant pain. *Id.* She requires restroom access due to nausea. *Id.* Neck damage limits her ability to look at computer screens or to look down. *Id.* She is intolerant to stress due to her heart conditions and blood pressure. *Id.* She has arthritis in her joints and in her hands and has pain from a bunion in her left foot. *Id.*.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 16. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 16. Specifically, the ALJ discounted plaintiff's symptom allegations because they conflicted with other evidence of her conservative treatment and work history. Tr. 16-18.

A claimant's conservative course of treatment for an allegedly disabling condition can undercut subjective testimony regarding the severity of the limitations that impairment causes. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment

is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162.

The ALJ first highlighted plaintiff's "conservative care" for neck and back pain as a reason to discount her symptom testimony, but failed to cite substantial evidence to support this rationale. Conservative treatment can be a reason to discount symptom testimony, but only where that treatment is, in fact, conservative. *Parra,* 481 F.3d at 750-51. Here, the ALJ characterized plaintiff's care for her degenerative disc disease as "conservative" because it included only "chiropractic care, physical therapy, home exercises and massage." Tr. 17. The ALJ neglected to acknowledge that plaintiff treated her back condition with steroidal injections, however, which are not typical "conservative" treatment. *See, e.g., Contreras v. Berryhill,* 2020 WL 619792, at *4 (N.D. Cal. Feb. 10, 2020) (noting that "[n]umerous courts have rejected the argument that trigger point injections are 'conservative '" and collecting cases); *see also Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (suggesting treatments such as occipital nerve blocks and trigger point injections do not constitute conservative treatment). Furthermore, as the Ninth Circuit has emphasized, ALJs cannot reject a claimant's testimony due to allegedly conservative treatment "where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle*, 533 F.3d at 116; Social Security Ruling 82–59. The ALJ acknowledged that plaintiff was prescribed surgery for her back issues, Tr. 17, but failed to consider that she was unable to afford the procedure without insurance, or her explanation that "her doctor is looking into other treatments…since people with lupus do not do well with medical implants." Tr. 224. These would both be sufficient explanations for failure to follow treatment advice, and it was error for the ALJ not to consider them. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Plaintiff's supposedly "conservative" care for her neck and back pain

was not a clear and convincing reasons for rejecting plaintiff's testimony about these symptoms. On remand, the ALJ must consider plaintiff's full treatment history and her justifications for failure to follow through with surgery.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her testimony about when she stopped working. Tr. 18. A claimant's activities of daily living—including prior work history—can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). A claimant need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ failed to adequately identify transferable work skills or inconsistencies between plaintiff's work history and symptom testimony, and therefore erred. When discounting symptom testimony, an ALJ's decision "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)(citation and internal quotation marks omitted). In this context, that means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. When raising conflicts between plaintiff's testimony and daily activities, the ALJ failed to connect the dots. The ALJ concludes that plaintiff's symptom testimony is "not

supported by…her activities of daily living." Tr. 16. The ALJ does not go on to identify which of plaintiff's statements or what testimony is supposedly undermined by the record, or what parts of the record undermine it. Instead, the ALJ notes that plaintiff "testified that she stopped working because her position was eliminated," and had "providers [who] encourage[d] her to continue exercising. Tr. 18. Neither of these citations show transferable work skills or specific conflicts with plaintiff's testimony about disabling pain. Nor is the ALJ specific about what testimony he is discounting on this basis. That leaves this reviewing court to surmise which "testimony []he found not credible" and what "particular parts of the record support[t] [his] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to provide such clear analysis is error, and the Court finds the ALJ's citation to plaintiff's daily activities was not a sufficiently clear and convincing reason for discounting plaintiff's symptom testimony about her limitations. On remand, the ALJ must specifically consider whether plaintiff's work history or daily activities conflict with specific testimony, and identify that testimony in the written opinion.

## II.     Medical Opinion Evidence

Plaintiff also argues the ALJ erred when finding Derek Leinenbach, M.D.'s medical opinions less than fully persuasive. Pl. Br. at 11-15. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so,

the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On January 7, 2019, plaintiff was evaluated in a consultative evaluation by Derek Leinenbach, M.D. Tr. 290. He noted the cervical MRI imaging from June 2019 showed severe bilateral canal foraminal stenosis at C3-4 and C4-5. *Id.* On examination, her gait was stable, reciprocating, and steady. Tr. 291. Her neck range of motion was limited to 30 degrees extension, 35 degrees flexion, 30 degrees lateral bending, and fifty degrees rotation. *Id.* She had tenderness to palpation at C3 to C6. Tr. 292. Spurling's test was positive at the right trapezius/shoulder. *Id.* Phalen's and Tinel's tests were positive at both wrists. *Id.* Straight leg raise test was negative. *Id.* He observed six out of eighteen tender points. *Id.* She had mild bilateral acromioclavicular tenderness, mild tenderness at both the CMC and IP joints, and mild ankle crepitus. *Id.* Dr. Leinenbach limited plaintiff to standing and walking four to six hours in an eight-hour workday. Tr. 293. He limited her lifting to twenty pounds occasionally and ten pounds frequently. *Id.* He limited her to occasionally climbing, stooping, crouching, and crawling. *Id.* He limited her right sided reaching to occasionally due to cervical degenerative disc disease with radiculopathy. *Id.* He limited her fingering and feeling to "frequent" and he limited her to "occasional" UV light exposure. *Id.*

9 – OPINION & ORDER

The ALJ adopted several of the limitations in Dr. Leinenbach's opinion, but rejected the right-sided reaching limitation as not supported by the record or reasonably explained. Tr. 18. Tr. 21. Specifically, the ALJ found this aspect of Dr. Leinenbach's opinion unpersuasive because it relied on plaintiff's subjective reports and lacked objective support from the record. Tr. 18.

The ALJ failed to support his decision to find Dr. Leinenbach's right-sided reaching limitation unpersuasive with substantial evidence because he did not address key elements of the record in his consistency and supportability analysis. The supportability factor requires ALJs to assess the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations" are. 20 C.F.R. § 404.1520c(c)(1). The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ highlighted a few purported inconsistencies between Dr. Leinenbach's opinion and the record, but failed to cite records that provide substantial evidence undermining the persuasiveness of his conclusions. Tr. 18. For example, the ALJ discounted the opinion because it was based on "plaintiff's subjective allegations," but failed to provide sufficient reasons for disbelieving plaintiff's testimony about her right-sided limitations. *See, e.g.,* Tr. 30 ("can't hold my arms up over my head because of my neck injury"). The ALJ also discounted Dr. Leinenbach's limitation to only occasional reaching with the right arm because there was "no evidence in the record of electrodiagnostic testing or nerve conduction studies that demonstrated extensive right side radiculopathy." Tr. 18. There are several other objective tests in the record that appear to confirm Dr. Leinenbach's diagnosis, which the ALJ fails to address. For example, an MRI from June 5, 2019, showed severe bilateral foraminal stenosis at C4-5, and moderate canal stenosis at C3-4, and C4-5. Tr. 465. X-rays from July 31, 2019 likewise showed moderate disc degeneration at

C3-4 and C4-5, and 2mm spondylolisthesis at C3-4 and C4-5. Id. Despite the lack of electrodiagnostic studies, the neurosurgeon was able to evaluate sensation and reflexes of the upper extremities and found decreased sensation in both upper arms and diminished and absent reflexes bilaterally. Tr. 464. At these appointments plaintiff presented with symptoms of right-sided neck pain radiating to the right upper extremity with weakness in both hands and difficulty lifting above her shoulders, all of which would support Dr. Leinenbach's diagnosis. *Id.* Because the ALJ discredited Dr. Leinenbach's opinion based on an insufficient view of the medical record and an erroneous rejection of plaintiff's testimony, he erred by finding this aspect of the opinion unpersuasive.

### III.     Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose

in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

       The ALJ committed harmful errors by failing to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony, and by failing to support his decision to find Dr. Leinenbach's right-sided limitation opinion unpersuasive with substantial evidence. After reviewing the record, however, conflicts and ambiguities remain between the medical record, plaintiff's work history between 2013-18, and plaintiff's allegations that her back and neck pain contributed to her inability to work during the relevant period. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate plaintiff's testimony, and Dr. Leinenbach's right-sided limitation opinion, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

IT IS SO ORDERED.

DATED this 21st day of November, 2024.

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge